922 P.2d 754 (1996)
E.M., a minor 14 years of age, Through his natural parents and guardians S.M. and C.M.; W.J., a minor 14 years of age, through his natural parent and guardian P.J.; and R.S., a minor 13 years of age, through his natural parents and guardians J.S. and C.S., Plaintiffs and Appellants,
v.
Mona BRIGGS, individually and as principal of Treasure Mountain Middle School; Carla Hunt, individually and as Vice Principal of Treasure Mountain Middle School; Donald Fielder, individually and as Superintendent of Park City School District; Park City School Board, a body politic of the State of Utah; and David Chaplin, Don Johnson, Colleen Bailey, Nikki Lowry, and Gene Lambert, individually and as members of the Park City Board of Education, Defendants and Appellees.
No. 950307.
Supreme Court of Utah.
August 2, 1996.
*755 Joseph E. Tesch, Park City, for plaintiffs.
Jan Graham, Atty. Gen., Brent A. Burnett, Asst. Atty. Gen., for defendants.
DURHAM, Justice:
Plaintiffs, three Park City middle school students and their parents, appeal from a district court order denying their motion for summary judgment and dismissing their claim in favor of defendant Park City Board of Education and several individual defendants. We affirm.

BACKGROUND
The core facts of this case are undisputed. During the 1993-94 school year, three students at Treasure Mountain Middle School in Park City, Utah, were apprehended by school authorities for possessing marijuana on school grounds. Principal Mona Briggs informed the students' parents that the students were being suspended for the remainder of the school year pursuant to the Park City Board of Education's new "zero tolerance" drug and alcohol policy. Following a hearing panel's approval of the students' suspensions and after the students had served ten days of those suspensions, Judge David S. Young issued a temporary restraining order preventing the Board from suspending the students. Judge Young ruled that because the school administration had failed to properly notify the students or their parents of its zero-tolerance policy, it could not enforce that policy in this case.
Immediately thereafter, school administrators informed the students' parents that the students would be disciplined under the school's prior drug and alcohol policy. On March 16, 1994, following a full hearing, the Board expelled the students for the remainder of the school year. The Board also ruled that the students could apply for home-bound instructional services.
On March 25, 1994, the students moved for a preliminary injunction in district court, asking Judge Young to enjoin the Board and the school administration from expelling them for the remainder of the school year. The students argued that the punishment they received was not specifically provided for in the policy under which they were being disciplined. Judge Young heard the motion on May 9, 1994, more than a month before the end of the school year, and took the matter under advisement. On June 28, 1994, after the school year had ended, Judge Young issued a decision denying the students' motion. He acknowledged that the motion was moot because the school year was over, but he nevertheless denied the preliminary injunction, stating that "the decision of the Board of Education [to expel the students for the remainder of the school year] has been rendered in compliance with the due process requirements of the 14th Amendment to the United States Constitution and Article I, Section 7 of the Utah Constitution."
The students then moved for summary judgment on their underlying claim pursuant to 42 U.S.C. § 1983. The claim alleged that school administrators and the Board had violated the students' right to due process under the Fourteenth Amendment to the United States Constitution by expelling them for the remainder of the school year. The school administrators and the Board had previously moved to dismiss the students' complaint, asserting that the students had failed to state a claim for relief. Judge Pat B. Brian, having replaced Judge Young, denied the students' motion for summary judgment and dismissed their complaint.[1]
*756 On appeal to this court, the students contend that the drug and alcohol policy under which they were disciplined did not allow the Board to expel them for the remainder of the year with homebound services. The students additionally argue that the school policy permits expulsion only upon recommendation of the Superintendent and in this instance the Superintendent recommended that the students be "suspended for the remainder of the year." (Emphasis added.) We note several important points that the students do not argue on appeal. Specifically, they do not argue that the school failed to notify them or their parents concerning its alcohol and drug policy. They do not argue that their hearing was in any way inadequate. Finally, they do not argue that the discipline they received  expulsion for the remainder of the school year with homebound services  was incommensurate with the act they committed. In sum, the students simply argue that the Board, by not following its own written policies, acted in an arbitrary and capricious manner in violation of the students' constitutional right to due process.
In response, defendants assert that the Board has discretion in administering its policies and that in this case the Board's disciplinary decision was based on a reasonable interpretation of those policies. They further argue that the Board's decision to "expel" the students for the remainder of the year, in light of the Superintendent's recommendation that the students be "suspended" for the remainder of the year, was a difference of nomenclature, not substance, and did not amount to a constitutional violation.

ANALYSIS
The drug and alcohol policy at issue in this case reads in part:
Any student who is found to have possessed... illicit drugs or alcohol on a first violation, or a repeated violation, shall be provided information or referred, as appropriate, to available drug and alcohol counseling and rehabilitation programs. In addition, the student shall be suspended or expelled from school in accordance with Park City School District Policies  Policy JGD  Student Suspension ... and Policy JGE  Student Expulsion....
Policies JGD and JGE reference "suspension" and "expulsion":
"Suspension" means an action taken by the school administration, under rules promulgated by the Board, prohibiting a student from attending school for a period of no more then five school days. Only a principal may suspend a student.
. . . .
Expulsion of a student from a school within this district is a serious matter, and the authority for such an act is reserved solely for the Board upon recommendation of the Superintendent.
These policies were distributed to students at the beginning of the school year along with the 1993-1994 Student Handbook. The Handbook states that "[t]he use, possession or distribution of illegal drugs, substances, alcohol, or tobacco are [sic] strictly forbidden" on school grounds. It further states that the consequences for these behaviors "may" include:
1. Parent Conference
2. In-School Suspension
3. Out of School Suspension
4. Police Intervention
5. Expulsion from the School District
The students contend that when the policies and Handbook are read together, it is apparent that the Board did not follow its own rules when it disciplined them. In essence, they argue that the Board could have suspended them for five days or expelled them *757 from the school district for the remainder of the year without giving them the option of homebound services. However, they contend that when the Board ordered a punishment between these two extremes, it acted in an arbitrary and capricious manner.
On two prior occasions, we have discussed the latitude a reviewing court should give a school board's interpretation of its own policies. In Elwell v. Board of Education, 626 P.2d 460, 463 (Utah 1981), we stated:
It should be here noted that the management, supervision and determinations of policy are the prerogative and the responsibility of the school officials; and that the courts should be reluctant to enter therein; and indeed should not do so unless it is shown that the complainant was in some manner deprived of due process of law, or that the action of the board was so entirely without justification that it must be deemed capricious and arbitrary.
(Footnote omitted.) We reached the same result in Espinal v. Salt Lake City Board of Education, 797 P.2d 412, 413-14 (Utah 1990), stating, "`It is the policy of the law not to favor limitations on the powers of [boards of education], but rather to give [them] a free hand to function within the sphere of [their] responsibilities.'" Id. at 414 (quoting Ricker v. Board of Educ., 16 Utah 2d 106, 110-11, 396 P.2d 416, 420 (1964)).
The United States Supreme Court has also addressed this issue. In Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Court reversed an Eighth Circuit Court of Appeals' decision which rejected a school board's interpretation of the phrase "intoxicating beverage" in its regulations. The Supreme Court explained:
[Section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.
Id. at 326, 95 S.Ct. at 1003 (emphasis added); see also Board of Educ. v. McCluskey, 458 U.S. 966, 971, 102 S.Ct. 3469, 3472, 73 L.Ed.2d 1273 (1982) (concluding that appeals court erred in replacing school board's construction of its policies with court's own notions).
Applying the standard from these cases, we conclude that the Board did not act arbitrarily and capriciously in violation of the students' constitutional rights when it expelled them for the remainder of the year with homebound services. The school's drug and alcohol policy and its Handbook both stated that expulsion was an appropriate discipline for students possessing illegal drugs on school property. The Board simply determined that the phrase "expulsion from the school district" could include an offer of homebound instructional services.[2] This determination was well within the Board's discretion.
We further find no merit in the students' contention that the Superintendent's recommendation that they be "suspended" for the remainder of the year with homebound services prevented the Board from "expelling" them for the remainder of the year with homebound services. District policy provides that a student may be expelled "upon recommendation of the Superintendent." Although in this case the Superintendent used the word "suspension," it is clear that his intent was to remove the students for the remainder of the school year.[3] The Board, in its discretion, interpreted the Superintendent's *758 recommendation that the students be "suspended for the remainder of the year" as a recommendation that the students be expelled for that same period of time. This interpretation was not arbitrary and capricious.
The decision of the district court is affirmed.
ZIMMERMAN, C.J., and HOWE and RUSSON, JJ., concur in the opinion of DURHAM, J.
STEWART, Associate C.J., does not participate herein.
NOTES
[1] Judge Brian dismissed the students' claim on the basis of the doctrines of law of the case and res judicata, referencing Judge Young's earlier decision denying the students' motion for a preliminary injunction. Although the parties dispute the appropriateness of the grounds Judge Brian relied upon in making his ruling, they agree that Judge Young's decision denying a preliminary injunction was not a final order on the merits. We agree and note that because of this, the doctrine of res judicata would not apply. See Salt Lake City v. Silver Fork Pipeline Corp., 913 P.2d 731, 733 (Utah 1995) (stating that there must be final judgment on merits before doctrine of res judicata is applicable). Accordingly, Judge Brian's decision denying the students' summary judgment motion and dismissing their claim represents the final, appealable order on the merits of this case. Thus, we need not determine whether Judge Brian correctly applied the doctrine of law of the case.
[2] Even assuming the students were correct in stating that the phrase "expulsion from the school district" could not include an offer of homebound services, the Handbook lists this discipline as one of many that "may" be given to a student. Nothing in any of the school's policies indicates that the Board could not give a student a lesser penalty than those specifically listed.
[3] As Policy JGD provides, a student may not be suspended for longer than five days. Thus, a literal interpretation of the Superintendent's recommendation would not have been possible under school policy.