**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN NIKOLS, an individual,

      Plaintiff-Appellant/
Cross-Appellee,

v.

DAVID CHESNOFF, an individual;
GOODMAN & CHESNOFF, a Nevada
professional corporation,

      Defendants-Appellees/
Cross-Appellants.

Nos. 10-4127 and 10-4134
(D. of Utah)
(D.C. No. 2:10-CV-00004-TS)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

This appeal arises out of John Nikols's efforts to assert a property interest

in land owned by his son. Nikols claimed rights in the land after his son's lawyer

obtained a prejudgment attachment to the property for unpaid legal fees. Nikols

challenges the district court's dismissal of his quiet title and equitable lien claims

to the property as barred by res judicata. The lawyer, David Chesnoff, cross-

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

appeals the district court's denial of his motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

We conclude the district court's finding of claim preclusion was correct. Nikols had every procedural and substantive opportunity to vindicate his ownership interest in the land under Utah law. Having lost in state court on the issue of ownership, his claim in federal court is barred. We also find the district court erred in denying without considering Chesnoff's motion for sanctions under Rule 11.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM in part and REVERSE and REMAND in part.

## I. Background

Nikols's son, Michael, was arrested on federal drug charges. Michael hired Chesnoff to represent him for a flat fee of $350,000. Michael subsequently pleaded guilty to distribution of a controlled substance. Nikols paid Chesnoff $160,000 of the fee, but the remaining $190,000 was never paid.

Seeking the balance of his fee, Chesnoff filed a complaint against Michael in Utah state court for breach of contract. He obtained a prejudgment writ of attachment on four parcels of land (the Parcels) titled in Michael's name. Soon afterward, Michael transferred his interest in the Parcels by quitclaim deed to Nikols. Nikols and Michael then filed cross-claims against Chesnoff in the contract action, alleging breach of contract and unjust enrichment. Nikols also

made a motion to discharge Chesnoff's writ of attachment, asserting that he, rather than Michael, was the true owner of the Parcels. The state court granted summary judgment to Chesnoff and awarded him $190,000 for unpaid fees. The court also reaffirmed the writ of attachment. But the court stayed execution of the attachment until Nikols could conduct discovery and perhaps illuminate his competing claim of a property interest in the Parcels.

Following discovery, the state court conducted a postjudgment hearing in which Nikols asserted his claim of a purchase money resulting trust in the Parcels. Nikols argued that although Michael held paper title to the Parcels, Nikols himself purchased the property and therefore had a trust interest under Utah law. In that action, Chesnoff and Nikols were represented by counsel and Michael appeared pro se. Both sides presented witnesses. Ultimately, the state court ruled Michael had been the owner of the Parcels at the time Chesnoff obtained the writ of attachment, and rejected Nikols's trust theory. The court therefore concluded Chesnoff was entitled to proceed with the execution of the attachment. Nikols and Michael unsuccessfully appealed to the Utah Court of Appeals.[1]

After a delay for Michael's criminal retrial, Chesnoff obtained a writ of execution against the Parcels from the state court. Nikols and Michael challenged

---

[1] *Nikols v. Goodman & Chesnoff*, 206 P.3d 295 (Utah Ct. App. 2009).

this writ in several ways. On December 15, 2009, both Nikols and Michael filed pro se objections to the writ of execution in state court. On January 4, 2010, they also initiated this action in federal district court seeking the following: (1) to quiet title in the Parcels, (2) to obtain an equitable lien on the Parcels, and (3) to recover the value of investments made in the Parcels under the Occupying Claimant's Act. Following a hearing on January 6, 2010, the state court denied the objections to the writ on grounds of claim preclusion. The court found that Nikols's claims of interest in the Parcels had either already been adjudicated or should have been raised in the postjudgment hearing. Nikols and Michael immediately filed a motion for emergency writ to stay the execution, which was denied by the Utah Court of Appeals.[2] They then filed a motion for a temporary restraining order in the federal district court, which was also denied. Nikols and Michael also appealed the state court's denial of their objections to the writ to the Utah Supreme Court. The appeal was transferred to the Utah Court of Appeals.

On June 28, 2010, the federal district court granted Chesnoff's motion to dismiss the complaint. The court held the quiet title and equitable lien claims were barred by claim preclusion, as they should have been raised in the state court postjudgment hearing. The court also denied Chesnoff's motion for sanctions. This appeal followed.

---

[2] *Goodman & Chesnoff v. Nikols*, No. 20100046, 2010 UT App 53 (Utah Ct. App. Mar. 4. 2010).

On November 26, 2010, while the appeal in this court was pending, the Utah Court of Appeals affirmed the state court's denial of the objections to the writ of execution.[3] The Court of Appeals agreed with the state court's finding of claim preclusion. The court held specifically that the postjudgment decision was a final judgment on the question of Nikols's ownership interest in the land and that the hearing met due process requirements.

## II. Discussion

Nikols appeals the district court's finding that his quiet title and equitable lien claims are barred by res judicata. Chesnoff cross-appeals the district court's denial of his request for sanctions under Rule 11. We address each argument in turn.

### A. Res Judicata

Whether a claim is barred by res judicata is a legal question we review de novo. *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs.*, 497 F.3d 1096, 1100 (10th Cir. 2007). To determine the preclusive effect of a state judgment, we apply the law of that state. 28 U.S.C. § 1738; *Valley View Angus Ranch, Inc.*, 497 F.3d at 1100.

Utah courts have explained res judicata includes two distinct doctrines: claim preclusion and issue preclusion. *Penrod v. Nu Creation Creme*, 669 P.2d

---

[3] *Chesnoff v. Nikols*, No. 20100413, 2010 WL 4816225 (Utah Ct. App. Nov. 26, 2010).

873, 875 (Utah 1983). Claim preclusion prevents a party from relitigating a claim for relief that was or could have been the subject of a prior judgment. *Id.* This doctrine serves "vital public interests," which include "fostering reliance on prior adjudications; . . . preventing inconsistent decisions; . . . relieving parties of the cost and vexation of multiple lawsuits; and . . . conserving judicial resources." *State, Office of Recovery Servs. v. V.G.P.*, 845 P.2d 944, 946 (Utah Ct. App. 1992).

Under Utah law, claim preclusion bars litigation of a claim where three elements are met. First, both the current and original suit "must involve the same parties or their privies." *Miller v. USAA Cas. Ins. Co.*, 44 P.3d 663, 678 (Utah 2002). Second, "the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action." *Id.* Third, "the first suit must have resulted in a final judgment on the merits." *Id.*

Nikols also identifies a fourth element that informs the first three: the parties must have had a full and fair opportunity to litigate the claim in the first suit. To satisfy this standard under Utah law, the party asserting preclusion must show the fundamental requirements of due process were met in the original proceeding. *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 391 (Utah Ct. App. 1987). Under Utah law, this is ordinarily an element only for issue preclusion. *See Snyder v. Murray City Corp.*, 73 P.3d 325, 332 (Utah 2003)

(discussing the elements of claim and issue preclusion, respectively). But the Utah Supreme Court has applied the full and fair litigation requirement to claim preclusion in at least one case. *Salt Lake City v. Silver Fork Pipeline Corp.*, 913 P.2d 731, 733 (Utah 1995). And Utah courts have recognized generally that claim preclusion is limited by state and federal principles of due process. *See Brigham Young Univ. v. Tremco Consultants, Inc.*, 110 P.3d 678, 686 (Utah 2005) ("[P]reclusion based on privity is an exception to the deep-rooted historic tradition that everyone should have his own day in court . . . . [But t]he due process clauses prevent preclusion when the relationship between the party and non-party becomes too attenuated.") (quotations omitted); *see also Brown v. Jorgensen*, 136 P.3d 1252, 1260 (Utah Ct. App. 2006). We therefore assume the Utah courts would not enforce claim preclusion if the original proceedings lacked due process under Utah law.

Finally, a federal court will not give preclusive effect to a judgment that does not satisfy constitutional requirements of due process. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–83 (1982). Thus, we must also consider whether Nikols's claims were fully and fairly litigated to "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Id.*

Here, the parties do not dispute that the first and second elements of claim preclusion are met. Nikols bases his challenge on the third element, arguing the

-7-

postjudgment hearing did not constitute a final judgment on the merits. He also contends his claims should not be barred because the postjudgment hearing did not afford him due process under Utah law.

### 1. The Recent Decision by the Utah Court of Appeals

As an initial matter, the Utah Court of Appeals recently addressed both of these issues in Nikols and Michael's appeal of the writ of execution. In affirming the lower court's finding of claim preclusion, the Court of Appeals held that the postjudgment hearing "resulted in a final judgment on the merits," and that "Nikols was afforded a proceeding subject to the full spectrum of due process." *Chesnoff v. Nikols*, No. 20100413, 2010 WL 4816225, at *1 (Utah Ct. App. Nov. 26, 2010) (quotations omitted).

Because we agree with the Court of Appeals' conclusions, we need not consider whether we must defer to its reasoning under the related doctrine of issue preclusion.

### 2. The District Court Did Not Err in Finding Claim Preclusion

Our independent review confirms the postjudgment hearing resulted in a final judgment and provided Nikols with due process under state and federal law.

#### a. The Postjudgment Hearing Resulted in a Final Judgment

Finality requires that the court dispose of all the parties and issues; the judgment is not final if claims are left pending. *Miller*, 44 P.3d at 678. "A judgment or order is final for purposes of collateral estoppel until reversed on

appeal, modified, or set aside in the court of rendition." *Berry v. Berry*, 738 P.2d 246, 249 (Utah Ct. App. 1987).

Here, the Utah district court expressly resolved Nikols's claim of a purchase money resulting trust in the Parcels and issued an order based on its conclusions. The court laid out its findings as follows:

> D. The Court concludes that John Nikols failed to meet his burden of establishing that a resulting trust existed with respect to the [Parcels].
>
> E. The [Parcels] were legally titled in the name of Michael Nikols at the time Chesnoff attached them in December 2005 and had been so titled since 1988.
>
> F. Thus, Chesnoff may lawfully proceed with his writ of attachment.

Aplt. App. at 52.

Nikols suggests any order issued in a postjudgment proceeding is not a final judgment except as to the judgment debtor. But he offers little to support this contention. The sole case that he cites, *Brigham Young Univ. v. Tremco Consultants, Inc.*, 156 P.3d 782, 788 (Utah 2007), did not address the finality of a postjudgment decision, and therefore provides no assistance. We thus conclude the postjudgment decision was a final judgment.

### b. The Postjudgment Hearing Provided Due Process Under Utah Law

Nikols contends the postjudgment order cannot have preclusive effect because the proceedings lacked the fundamental protections of due process.

Specifically, he argues due process under Utah law required that he be served with a formal complaint and receive a jury trial.

In support, Nikols cites *Tremco*. In that case, the Utah Supreme Court vacated an order from a postjudgment collection hearing because the proceedings lacked due process. *Tremco*, 156 P.3d at 788. The lower court had allowed the plaintiff to enforce a money judgment against non-parties, on the theory that the non-parties were the alter ego of the defendant, or, alternatively, that they had received a fraudulent transfer from the defendant. The court refused the non-parties' motion to intervene to defend themselves and entered an order against them.

The Utah Supreme Court reversed, holding "[t]he bare essentials of due process [] mandate adequate notice to those with an interest in the matter and an opportunity for them to be heard in a meaningful manner." *Id.* The court also found the claims the plaintiff brought against the non-parties—claims of alter ego and fraudulent transfer—should have been brought in a civil suit. *Id.* at 790–91. The court held, "a violation of due process does occur if a court permits a cause of action that should properly be prosecuted as a civil action to proceed under those rules promulgated to assist in the collection efforts of a judgment creditor." *Id.* at 790. The court further noted that a civil action requires a complaint and a jury trial. *Id.*

Nikols interprets *Tremco* to hold an individual's property interests cannot be adjudicated without a full civil action, complete with a complaint and a jury trial. He therefore suggests "the only rights that can be adjudicated in postjudgment collection proceedings are the judgment debtor's," Aplt. Br. at 8, as this individual has already received the necessary due process in the original judgment.

This is much too broad a reading of the court's holding. *Tremco* stands for two basic propositions. First, postjudgment collection proceedings cannot adjudicate the rights of non-parties who have not been afforded a hearing. *Tremco*, 156 P.3d at 788. And second, they may not "provide an alternative form of summary adjudication of claims that would otherwise be required to be prosecuted as civil actions." *Id.* at 791. The postjudgment order in *Tremco* failed on both counts.

This case stands in a far different procedural posture. Here, Nikols, after he intervened, was a party to the original action and was provided ample opportunity to defend his ownership interest in the Parcels. Further, Nikols has not shown Chesnoff used the postjudgment proceedings to assert a claim against him that would otherwise require prosecution in a civil action. Nikols does draw our attention to several claims regarding real property that would fall into this category, including claims to recover property, to quiet title, and for adverse possession. But Chesnoff did not bring a claim *against Nikols*, either actually or

-11-

functionally. He sought only to enforce his judgment against *Michael*, the judgment debtor and the record owner of the property. The fact that Nikols intervened to claim an interest in the property did not oblige Chesnoff to bring a separate suit against Nikols. Utah law provides procedures for third parties with an interest in property to assert their rights in the course of an execution of a judgment. Nikols chose to take advantage of those opportunities, but lost.

Because Nikols has not shown he was entitled to a full civil trial under *Tremco*, he cannot prevail on his claim that the postjudgment proceedings denied him due process. Under Utah law, due process ordinarily requires "only that the parties must receive notice, reasonably calculated, under all the circumstances, to apprise them of the pendency of the action" and "an opportunity to present their objections." *Career Serv. Review Bd. v. Utah Dep't of Corr.*, 942 P.2d 933, 939 (Utah 1997) (holding "our case law does not require either a motion or a hearing for full and fair litigation"); *see also 3D Constr. and Dev., L.L.C. v. Old Standard Life Ins. Co.*, 117 P.3d 1082, 1087 (Utah Ct. App. 2005) (stating that a judgment need not be the result of a trial to have preclusive effect; the issue was fully and fairly litigated "if the party against whom issue preclusion is sought had adequate notice and an opportunity to litigate the issue").

The postjudgment proceedings were more than sufficient under this standard. Nikols not only received notice and a hearing, but enjoyed legal

-12-

representation, conducted discovery, presented witnesses, cross-examined Chesnoff's witnesses, and appealed the court's decision.

### c. The Postjudgment Hearing Provided Due Process Under Federal Law

"[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer*, 456 U.S. at 481. A jury trial is not required to meet this standard; a proceeding that involves notice, an adversarial hearing, an opportunity to cross-examine witnesses, representation by counsel, and appellate review is more than sufficient. *See id.* at 484; *Bolling v. City & County of Denver*, 790 F.2d 67, 68–69 (10th Cir. 1986) (finding a state administrative decision that was the result of an adversarial hearing and that was affirmed by the Colorado Court of Appeals was entitled to preclusive effect). The proceedings in Utah state court thus met the due process requirements of federal law.

In sum, we agree with the district court that Nikols's claims are barred by claim preclusion.

### B. Sanctions

Turning to the cross-appeal, Chesnoff challenges the district court's denial of his motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. We review the district court's decision not to impose sanctions under Rule 11 for

-13-

an abuse of discretion.  *White v. General Motors Corp.*, 908 F.2d 675, 678 (10th Cir. 1990).

Chesnoff requested sanctions through two different motions.  In his motion to dismiss, he requested attorney's fees pursuant to Utah Code Ann. § 78B-5-825. He then filed a second motion for sanctions under Rule 11.  When the district court dismissed the complaint, it also denied Chesnoff's request for attorney's fees under § 78B-5-825, finding Chesnoff had failed to show Nikols made his claims in bad faith.  But it did not address the separate motion for sanctions under Rule 11.  The court then stated:  "ORDERED that Defendant's Motion for Sanctions is DENIED.  It is further ORDERED that all other pending motions are moot."  *Nikols v. Chesnoff*, No. 2:10-CV-0004-TS, 2010 WL 2639968, at *7 (D. Utah June 28, 2010).

It is not clear whether the district court denied Chesnoff's Rule 11 motion under its first order, that "Defendant's Motion for Sanctions is DENIED" or the second, finding that "all other pending motions are moot."  But either way, we find the denial of this motion without conducting the inquiry required by Rule 11 was abuse of discretion.

Because the standards for the Utah fee shifting statute and Rule 11 are not the same—§ 78B-5-825 requires a showing of bad faith, *Still Standing Stable, L.L.C. v. Allen*, 122 P.3d 556, 560 (Utah 2005), but Rule 11 uses an objective standard of reasonableness, *White*, 908 F.2d at 680—the district court's resolution

of the § 78B-5-825 motion did not dispose of the Rule 11 motion. And there is nothing to support a finding that the Rule 11 motion was moot, given that the district court dismissed Nikols's claims and concluded "Defendant has made a fair showing that this suit has no merit . . . ." *Nikols*, 2010 WL 2639968, at *6.

We therefore remand this case for the limited purpose of determining whether Nikols violated Rule 11. The district court is in the best position to determine whether any violation of Rule 11 occurred. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403 (1990) (noting whether a litigant's position is factually well grounded and legally tenable for Rule 11 purposes is a "fact specific" determination which the district court is "better positioned" to make).

### III. Conclusion

Accordingly, we AFFIRM the district court's dismissal of Nikols's complaint. We also REVERSE the denial of Chesnoff's motion for sanctions under Rule 11 and REMAND for the limited purpose of determining the propriety any such sanctions.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge

-15-